We will hear first from Mr. Soukup. May it please the court, Jeffrey R. Soukup for the Petitioner, Consolidation Coal Company. The ALJ in this Blackland benefits case thrice considered conflicting medical evidence. Twice he denied benefits as the evidence provided a presumption of disability due to pneumoconiosis, which applies in this case. The Benefits Review Board, however, vacated both of those benefits denials and effectively ordered the ALJ to which are expressed in the preamble to the Blackland Regulations Amendments in assessing the medical expertise. And on the third time, after the ALJ complied with that order, he completely reversed his prior findings, awarding benefits, claiming he now found some experts to be contrary to the preamble and others to be consistent with it. The board exceeded its authority by ordering the ALJ to measure medical experts against the tenets of the medical evidence. He is not, he cannot be required to do so. And the reason why is because regulations or rules which are issued through notice and comment pursuant to the Administrative Procedure Act do have the force of law. The preamble, however, which essentially just contains explanations about the changes in regulations and other information from medical science that the department considered in amending the regulations, was not issued the notice of comment and cannot be given the force of law. By requiring the ALJ to measure doctors' opinions against the preamble at the Department of Labor's Museum of Science expressed in the preamble. On that question, let me just ask you, and it may be of no moment, but I thought there was a distinction, an effort made to make a distinction between a direction to consider the preamble and take it into account and to consider a claimant's preamble which the immigration judge IJ could just really reject. Is that meaningful? Because the board remanded it to consider the claimant's argument based on the preamble. Isn't that right? That's the distinction that the board and the director have made in this case. Yeah, okay, just address that. Yeah, sure. My position would be that that is a distinction without a difference because whenever you're remanding, in this case, if you're remanding for the ALJ to consider the argument about whether the consolidation's expert's opinions conflict with the preamble, you necessarily have to consider the preamble's positions, compare them to the med flight's positions, and determine whether there is a conflict. My position is that the case law confirms that the ALJ is under no obligation to consider the preamble in the first place. It can because he can look at that and consider it as comparative. Mr. Sukup, Judge Diaz here, I'm sorry, but I guess the question is whether in the previous ALJ opinions the ALJ made it clear that he wasn't going to consider the preamble because he wasn't required to or whether he simply said nothing about it in which case the board properly put him to the analysis. Consider this argument, decide whether or not the argument is consistent or contradicts the preamble and if so, whether or not that makes the expert opinions less or more credible and I think embedded in that is a discretion for the ALJ to not consider the preamble because it's not required but if the ALJ didn't engage with that analysis, why wasn't it appropriate for the board to require it to do that? Well, Your Honor, even if you accept that premise, even the director concedes in her brief that not all arguments have been properly raised have to be considered at all by the ALJ. That appears to be the position of the director that basically some arguments are more important than others, some arguments must be considered, the preamble is one of these and that's not at all borne out by this law in question. Well, to counsel, I think this is an important point and I may not have this completely right but it seems to me it's decided really about how we consider really three concepts. One is the scope of review that the board has in these black lung cases and the regs seem to restrict that scope of review more than general agency law and seem to limit it only to whether there's substantial evidence or not. On the flip side, you got the 557 which says you must consider all material facts and preamble, the argument that is made by Shipley concerning the preamble is a material issue or not. Is it your position that it's not it's not material? The 557 standard you referred to is that the, I guess the fact finder or the tribunal has to consider all material facts overall. The preamble was neither. It's a position advanced by one party, in this case the director. It can be considered, the ALJ has discretion to consider it, certainly. But like all other arguments, an ALJ does not need to necessarily consider it in deciding benefits. Apparently in this case, in the first two decisions, the ALJ felt it was of no concern because he believed that my client's experts were credible notwithstanding any alternative theories of medicine. In any event, I know I've spent a lot of time on this issue but this is kind of interesting in that this is the preamble arguments are largely material because in this instance, the largest, the biggest preamble argument advanced by the other parties are that Drs. Blatt, Beshida, my client's experts advanced a theory of what's called the FEV-1 ratio. This is a, generally speaking, the FEV-1 ratio is a standard by which you judge whether somebody has obstructive one. The theory advanced by the Department of Labor is that Drs. Blatt relied on a claim that the FEV-1 ratio does not deduct at all, it does not diminish in response to polamide dust exposure. And the ALJ adopted this theory and found that my doctors are contrary to the preamble because of that. The problem with that is that neither doctor ever expressed such a view. Dr. Beshida, who submitted a written report but not a deposition, expressed no view at all on the relation of the ratio in response to polamide dust exposure. Dr. Blatt provided both a report and a deposition. And despite numerous times in the deposition from the Claimants Council trying to get Dr. Blatt to adopt this forbidden view, if you will, he rebuffed it every time. Dr. Blatt said, no, I don't agree with you with the proposition that polamide dust does not significantly reduce the ratio. I mean, he's, in my opinion, just reading this deposition and these reports, it couldn't be clearer that these doctors did not express this view that was contrary to the preamble. And to me, I'm trying to think where it fits into the analysis. It seems like our first decision point is the second board decision. Because does the board have the authority to require the ALJ to consider an issue if it otherwise is supported by substantial prohibits the ALJ from saying what you just said. And the board didn't say, you know, that in the second opinion that there was any, you know, any opinions contrary to the preamble, it just said, consider them. So I think we got the first, it seems like the first issue was, was that second board decision right? And if it wasn't, that may end the case. If it was, then we go to the third ALJ decision and see, you know, and measure it. And I think that argument comes into play in that third ALJ decision. But does it come in before then? Well, the issue of whether the board properly remanded to consider the issue or the argument comes in at the second board decision, I agree. Correct. I think, as I said before, I think under 5 U.S.C. 557, the board, considering that it's a statute, the board would have authority to require an ALJ to consider material facts or law. But again, I don't, and even the director concedes this, I don't think the board has authority or I don't think there's any requirement that a fact finder is required to consider every argument that's advanced. And I would submit that's even. That's a clear proposition, but that doesn't answer it. In other words, if the board chose to have the IJ to consider it, doesn't it have authority to tell them so? I don't think the board is required to require. Not required. It exercises discretion to tell the IJ to consider this argument. No, not if there are any other, not if there are no other factual errors in the ALJ's decision. And in both of the benefits denials, the ALJ reviewed all the experts, found that my company's experts provided well-reasoned opinions. And I think that should end with review because that decision was supported by substantial evidence and was not irrational. So on that issue, I mean, if that's true, that's different than the way agency law generally works, it seems to me. Generally, an agency has all the powers that, you know, the decision maker below, the ALJ or whatever, has. And it's common to say consider an argument. Is there something, is your position that I'm wrong about that? Or is there something unique about this black lung context where the board's decision, the board's authority is more limited? I don't think there's anything in the statute or in the regulations by which the board can simply send a decision back because it feels that an ALJ did not consider one argument or another. I think that the ALJ's decision on its own terms is rational, is supported by substantial evidence, and is not contrary to law, then that should be the end of the game for the board in its consideration. And I submit to you that was clear in both of the ALJ's two decisions in which he denied benefits. He considered all the evidence advanced by the parties. He identified defects in the claimants, Mr. Shipley's experts, that did not warrant giving them any substantial weight. He found that my company's experts were supported by substantial evidence and were rational. And by token of that, denied benefits. However, Judge, I can't really stress this enough. Even if you accept the way that the director and the board have positioned this and that it's just allowing them to review an argument and they're properly allowed to do that, without paying any of the board. Again, there was really no conflict with the preamble for the ALJ to have found in the first place. The alleged conflict is that Drs. Blatt and Beshida said that a FAB1 ratio does not produce withholding. Again, that's not present in any of their opinions, any of their depositions, so there was no basis on which to even find a conflict in the first place. Judge, that takes us to the third ALJ decision, as you hinted at before. And if that's, can I just finish my thoughts, Your Honor, on my time? If we get to that point, yes, we do need to review the third ALJ decision for consistency with the law, and that's where the errors are found at that point. Finding a conflict with the preamble not borne out by any evidence, let alone substantial evidence, that would result in at least a vacater, if not a reversal. All right, thank you. Ms. Hurley, we'll hear from you next. Good morning, Your Honors. My name is Sarah Hurley and I represent the Department of Labor, Office of Workers' Compensation Programs. The main issue before this Court is whether in 2016, the Benefits Review by remaining a case for consideration of claimants' argument that employers' experts' opinion were flawed by reliance on a theory that was at odds with the medical science as set forth in the preamble. In employers' view, BRB's instruction impermissibly imbued the preamble with force of binding law, but employers mistaken. The order did not, the Board's order did not imbue the preamble with... I understood that to be his argument after reading the briefs, but on questioning today, it's a little, it's a little bit different as I understand it. I think what he is saying that the ALJ's opinion was not erroneous on its face and the Board sent it back to consider an argument that was not justified in view of the fact that there was no error in that ALJ's second opinion. In other words, the Board doesn't have a right to look at an argument that wasn't considered if the ALJ came out with an opinion that satisfies all the criteria of a proper opinion. And so, if I understand him, he's saying that while the Board has a lot of discretion to send things back, it can't in the face of a proper opinion. It has to either, it has to find some reason to open the opinion up and revamp it. Well, with respect to the ALJ's second opinion, there were flaws that the Board identified in addition to the fact that the ALJ did not address Klayman's argument about the FEV1 ratio. Well, counsel, if you, to just finish Judge Niemeyer's point out, if, assume, and I'm not suggesting you're giving this up, but assume the opinion is otherwise acceptable, supported by the Board, the company's point is if that's the case, it's improper for the Board. The Board doesn't have the ability to say, consider this other argument. Because one, they don't have to consider every argument. That's the general rule. And two, this particular argument has been held by us already to be something that does not have to be considered. So what authority, if you take my hypothetical, which I know you disagree with, what's the authority of the Board to send back to consider an argument if the opinion is otherwise satisfactory? Well, the problem is the Administrative Procedure Act. I mean, that instructs the ALJ to make findings and conclusions on all material issues of factor law discretion presented on the record. And here, Klayman's argument on this issue was clearly material because it was potentially dispositive. And that's because this Court even has recognized that the medical opinions based on an invalid FEV1-FEC ratio are contrary to science expressed in the preamble and can be discredited on that basis. But I grant you that's an argument, but your colleague says it's not a fact and it's not a law. So, yeah, it doesn't say all material arguments. It says, you know, all material facts and law. So where do you fit? How do you fall within that portion of the APA? Well, the APA instructs the ALJ to make all findings, in fact, and conclusions on all material issues of law, facts, or discretion presented in the record. And in this case, the Klayman's argument is material. It's a material issue of law. Okay. I appreciate your argument. Thank you. Ms. Hurley, can I ask a follow-up? I don't know that you fully answered Judge Niemeyer's earlier question, and I appreciate Judge Quattlebaum's hypothetical, but in addition to this concern about whether or not the ALJ erred in not considering arguments based on the preamble, there was also this problem of burden shifting with respect to clinical and legal pneumoconiosis and in both cases, the board said that the ALJ improperly shifted the burden to the petitioner as opposed to the respondent with respect to contributing factors with respect to black lung disease. So, I mean, that was part of the reason, frankly, I thought a substantial part of the reason why the board was sending the case back in addition to this concern about not addressing the argument regarding the preamble. Do I have that right? I definitely, definitely with regard to the ALJ's, to the board's first order remanding this case in, I think it was 2015, they did identify that clear error in the ALJ's analysis and actually the employer doesn't dispute that, that the ALJ did shift the burden of proof in its first decision. I thought the board, I'm sorry, I thought the board mentioned that also in the second opinion. I think it was only in the first, it was in the context of the 15-year presumption that he did shift the burden of proof. The other point that was in the second board decision sending it back, there were other grounds too and one of them was that the employer's experts hadn't proved that this miner's 40 years of coal mine employment wasn't an additive risk to the development of this totally disabling respiratory impairment. I'm quoting the board decision here and I hope I have it right. There's a footnote in the board's second decision that says that the ALJ made, quote, made no findings regarding the existence of legal and clinical pneumoconiosis under the standard, and the rest of it is not a quote, but under the 15-year presumption. Isn't that something else in addition to this preamble that had the board concerned? Yes, definitely. They identified other errors in the decision, not just the failure to consider claimant's argument. And with regard to the fact that I think employer is arguing that its experts didn't expose the FEV1-FBC ratio, with respect, they did. Dr. Bolloy clearly said that a reduced FEV1-FBC ratio indicates tobacco-induced lung disease, and Dr. Petito said that that type of reduced FEV1-FBC ratio is indicative of asthma. So, it seems to me they were definitely denying the fact that a reduced FEV1-FBC ratio was not indicative of coal mine employment, which is contrary to the preamble and the regulations. Your Honors, I have no further questions, I think. All right. Thank you, Ms. Curley. Thank you, Your Honor. May it please the Court, my name is Matt Gribler and I represent Mr. Shipley, a respondent in this case who is a coal miner with more than 40 years of qualifying coal mine employment and a totally disabling respiratory impairment. That entitles him to the indication of a 15-year presumption, which shifts the burden to the employer to prove the absence of legal pneumoconiosis. We can agree that he disproved clinical pneumoconiosis, but the employer then has the burden to disprove legal pneumoconiosis. It's defined as a by coal mine dust exposure. Now, the Board held, and I can read from the Board's decision, it's at the Joint Appendix, page 432, in light of the medical science found credible in the preamble, finding the effects of smoking and coal dust exposure additive, the ALJ permissibly found that neither physician adequately explained why claimants more than 40 years of coal mine dust exposure did not significantly contribute along with the other factors. Now, I tend to disagree just a bit with the Director here in that the Director would limit the Board's decision affirming the administrative law judge's credibility determinations to just one factor, that being the additive effects of smoking and coal dust in the preamble. My reading of the Board's decision is that they affirmed the judge's finding that in light of the preamble acknowledging additive effects of coal dust and tobacco smoking, they affirmed the judge's decision that Drs. Bilat and Beshida didn't adequately explain why claimants coal dust was not a factor. And the judge gave multiple different reasons to discredit Drs. Bilat and Beshida, which have all been before the ALJs, the Board, and this Court many times, and have been discredited by the ALJs and affirmed by this Court, the first of which would be relying... Counsel, on this point, can I stop you? And many times with agency decisions, we review the final Board decision, and that's what we're limited to. And in a situation like this, where the Board appears to rely on one of the ALJs reasons rather than others, normally we look just to that reason, and we'd have tenery issues if we, you know, didn't do that. It looks like our law says that in this context, this particular agency context, we actually review the ALJ decision, yet we step into the shoes of the Board. Do you agree with that? Judge, I do agree with that, and I believe we still reach the same decision here. Yeah, I understand your argument. I just wanted to make sure, and if the company's counsel could maybe address that, I just want to make sure I'm understanding how we review this thing going forward. And I have one other question related. If we are at a position that we look at the third opinion, can we look at its, you know, whether it is a proper opinion, whether it's arbitrary, you know, all the things that are complained about, are we confined to the four corners of that opinion, or can we look at it in relation to its earlier opinions that it issued? Judge, I think you can look at the third opinion in addition to the portions of the first two opinions that weren't vacated by the Board, because if my recollection is correct, I don't believe the Board completely vacated the judge's first two decisions, only with respect to certain issues. So, your position is we can't consider the about-face that the ALJ made? No, Judge, because the about-face deals with the specific issues that the Board vacated the ALJ's first two decisions on. Yeah, I realize they're vacated, not binding, but isn't, aren't we just ignoring reality if we don't look about how he said the light was green and then very, and then said the light was red? I mean, that can't be part of our analysis at all. Is there any authority for that? Well, Judge, I think, first of all, the opinions of Dr. Schaff and Bagley, which the judge's treatment of those in the third decision are harmless, they're irrelevant because it's the employer's burden, and the employer has to produce credible doctor's opinions to meet its burden, no matter what credibility is given to Dr. Schaff and Bagley. So, in looking at Dr. Schaff and Bagley's opinions, the Board vacated the judge's decision with regard to Drs. Balot and Bashida based, in large part, on this FEV1 argument, which the Board, or the judge, failed to address in his first two opinions. And, in fact, in the judge's second decision in order, he actually credits Dr. Balot based on that FEV1 ratio theory. At joint exhibit 387, the Administrative Law Judge says that Dr. Balot, upon the claimant's FEV1 FEC ratio, should cigarette smoking cause claimant's pulmonary impairment, not coal dust exposure. And then, in the next paragraph, says the undersigned finds these explanations well reasoned and well documented. So, not only did the ALJ fail to consider claimant's argument that the FEV1 ratio was contrary to the preamble and hostile, but he, in fact, credited that FEV1 ratio theory espoused by Dr. Balot. And I think, to answer your question, the Board vacating that part of the ALJ's decision, I think it tends to direct this court to review only the ALJ's third decision with regard to the credibility determinations from Dr. Bashida and Balot. Because the Board vacated the judge's first two decisions because he failed to even consider the preamble and the case law, which allows a judge to consider that determinations. Now, I mean, just to touch on the argument made by the Director, the Board didn't force the judge to discredit the doctors based on the preamble. Instead, what the Board said was, Judge, just address it. Tell us. Recognize, does it conflict or not? And if it does, are you still going to credit the doctor's opinions despite that? Or are you going to discredit the doctors as a result? And judges, I see my time is up, and thank you. All right. Mr. Gribler, I'm sorry, Judge Niemeyer, can I ask a question? And Mr. Gribler, this is a broader question that has some relevance to this case, and is a function, frankly, of the fact that, at least for me, I don't see these cases all that often, and so I don't claim to be an expert when it comes to black lung cases. So you've got this part of the, and what Judge Qualbaum said about the red light, green light kind of resonated with me because it seemed you could sort of read between the tea leaves that the Board wanted to prod the ALJ to revisit this case very carefully. But in your experience, I mean, the rebuttable presumption is intended to be rebuttable, but I've not yet seen a case that I've been on the panel where an employer has been able to rebut that presumption. Have you lost any of those cases when you've got the rebuttable presumption in your favor? I don't want you to tell me what your track record is, but I'm just curious about it. We have, Your Honor. We haven't appealed any of those to this court, but we have lost cases where we have the presumption, and that happens where maybe there's objective testing numbers meet the Department of Labor qualifying guidelines in addition to 15 years, but then a doctor, for example, our physician, the Department of Labor physician, renders just a conclusory opinion that coal mine dust caused the disease here, and employers' doctors present a more well-reasoned, more well-documented opinion, and that happens more often than you think, Judge. Okay. Well, that's helpful. I appreciate it. Thank you. Three minutes rebuttal time, I think. First of all, there appears to be a great deal of misconception about what argument about the FEV1 ratio is actually contrary to the preamble. The Director's Counsel is giving the impression that any discussion of the ratio at all, no matter what, regardless of what they say about the ratio, makes it contrary to the preamble. At least that's how I take your argument. That is not so. I think what he's saying, I think what is being said is that if there is a determination of the ratio that's inconsistent with the science expressed in the preamble, then there ought to be an explanation as to what science is governing and why. I think that's the point being made, isn't it? With all due respect, Your Honor, I would not put it that way. What the Director seems to be saying is that Drs. are discussing the FEV1 ratio in their opinions. What is contrary to the preamble is the opinion that the FEV1 ratio does not significantly decrease in response to coal mine dust exposure. Neither doctor took that position. Dr. Beshida does not discuss the FEV1 ratio in his report. Dr. Block, repeatedly in his deposition, in response to Claimant's Counsel's attempts to raise this argument, said, no, I do not agree that coal dust exposure does not significantly reduce the FEV1 ratio. So it's really a non-issue. There is no basis to discredit them on the basis of the preamble. I guess, secondly, Judge Quattlebaum, I was going to get to your point, if that's okay. Yes. Does the preamble say anything about the relative decrease of FEV1 of smoking-induced lung disease compared to coal dust-induced lung disease? If it does, I'm not aware of it. I mean, the critical point here is that the FEV, what the preamble says is that coal mine dust exposure, just like cigarette smoke, does decrease the FEV1 ratio because the ratio, frankly, is a measure of obstruction. I mean, if it reduces, at least significantly, you have an obstructive lung disease. Both doctors affirm that it does. There's, I don't see how that is an issue. Judge Quattlebaum, you asked me to address whether you, as a court, have the authority to review the ALJ's fact findings apart from what the board chose to construe them as. And yes, I believe you do because the ALJ is the ultimate fact finder in these cases. And as you hinted, it is this court's responsibility to review the agency's fact findings. The board is not the agency. The board is a review body that determines whether the ALJ's decision is consistent with substantial evidence, rationality, and the law. So if you find any one of these ALJ's justifications for rejecting my company's experts to be flawed, to be not sufficiently explained in his decision, you can reverse, you can remand. Your Honor, I'm out of time. If you have any other questions for me, I'm happy to address them. Thank you very much. We appreciate the good arguments of counsel. We would normally come down and greet counsel at this point and shake your hand. And as I the prior panel, I don't know if the Zoom technology has afforded that possibility yet. In Star Trek, they say, beam me up. Maybe that'll happen someday. But anyway, we extend our greetings to you and thank you for your arguments. And we'll, of course, take this case under advisement.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.